[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by virtue of summons and complaint, which complaint was dated September 7, 1999 and returnable October 5, 1999, in which complaint the plaintiff petitioner sought a dissolution of the marriage, alimony, change of name to Komiega, an allowance to prosecute, a property settlement in accordance with §46b-81 of the Connecticut General Statutes (C.G.S.) and such other relief as the court deems fair and equitable.
Accompanying the complaint was the usual notice of automatic court orders, a motion for exclusive possession pendente lite and the return of the sheriff.
A financial affidavit was filed by the plaintiff on September 29, 1999.
On November 1, 1999 counsel appeared for the defendant and on said date the defendant filed an answer to the complaint and a cross complaint, and CT Page 2688 in the cross complaint the defendant claimed a dissolution of the marriage, alimony, an equitable distribution of real and personal property and such other equitable relief as may be appropriate.
On November 15, 1999 there was filed by the plaintiff a motion for exclusive possession of the residence of the parties known as 20 Fitch Avenue in New London.
On November 29, 1999 the court accepted an agreement of the parties dated November 29, 1999 whereby the plaintiff shall have exclusive use and possession of the marital residence and the defendant reserved the right for a walk-through viewing of the residence, this by the court, Kenefick, J.
On January 21, 2000 the defendant filed a notion regarding health care and insurance pendente lite,
On February 1, 2000 the plaintiff filed a motion for alimony, debt allocation and a motion to enjoin pendente lite.
On February 22, 2000 the court, Kenefick, J. denied the plaintiff's motion for alimony, requested proof of the defendant's SSIP income and directed that the plaintiff was to look into medical coverage for the defendant on the plaintiff's plan.
The plaintiff filed a financial affidavit file-stamped February 22, 2000 as did the defendant on the same date.
On March 20, 2000 the defendant filed a motion regarding health insurance pendente lite and the defendant filed a motion to modify the earlier adverted to automatic orders pendente lite asking the court to lift the freeze thereon insofar as the defendant's General Dynamics benefits are concerned.
On May 15, 2000 the court, Parker, J., entered an order in accordance with an agreement dated that date which allowed for the defendant's pension plan to be put into pay status inasmuch as the defendant had reached retirement age; this without prejudice.
On said date the court also acted on plaintiff's motion for contempt dated May 12, 2000.
On July 6, 2000 the defendant filed a motion for alimony pendente lite and on July 7th the defendant filed a motion regarding a pension and the necessity for a waiver thereof pendente lite and on July 24, 2000 the court, Kenefick, J., approved a certain stipulation dated July 20, 2000 CT Page 2689
On October 16, 2000 the defendant filed a motion for alimony pendente lite and after hearing the court, McLachlan, J., granted the same to the effect that the plaintiff wife shall pay $100.00 weekly with the right to seek reimbursement out of the defendant's retroactive payment.
A further financial affidavit was filed by the defendant on October 30, 2000.
On November 22, 2000 the defendant filed a motion for contempt pendente lite.
The plaintiff on November 27, 2000 filed a motion to modify the alimony pendente lite and on December 26, 2000 the defendant filed a motion for medical insurance pendente lite, none of the aforementioned three motions however appear to hove been acted upon.
On February 2, 2001 the plaintiff and the defendant with their respective attorneys appeared before the court and the matter was heard to a conclusion.
The court makes the following findings of fact:
The plaintiff, whose maiden name was Nancy A. Komiega, and the defendant were joined in marriage at New London on December 19, 1987.
Both of the parties have resided continuously in this state for one year next before the filing of the complaint.
The marriage of the parties has broken down irretrievably and there is no reasonable prospect for reconciliation.
The plaintiff and the defendant have no minor children issue of this marriage.
No children have been born to the plaintiff petitioner from the date of the marriage to the present time.
The State of Connecticut nor any municipality or any subdivision thereof are contributing to the support and maintenance of either of the parties.
The parties have been separated since November of 1999.
At the time that the parties were joined in marriage, it was done in the then home of the plaintiff. CT Page 2690
Prior to their separation, the parties resided together at 20 Fitch Avenue in New London. In November 1999 the defendant moved from said location to a residence in Groton.
According to the testimony the record title of the property at 20 Fitch Avenue stands in the name of both the plaintiff and the defendant.
The plaintiff is age 44; date of birth, June 13, 1956.
The plaintiff testified as concerns matters of health that she will require a joint replacement in the left knee, that she is afflicted with asthma, and has carnal tunnel syndrome.
The plaintiff performs exercises trying to cope with carnal tunnel problems.
The plaintiff for 14 years was employed at Electric Boat as a welder and it was the plaintiff's testimony that she felt she acquired the carnal tunnel syndrome due to vibrations incident to her welding job.
The plaintiff testified that her asthma is chronic.
The plaintiff graduated from Warren High School in Rhode Island in 1974 and thereafter attended Three Rivers College.
In 1994 the plaintiff graduated with a degree in criminal justice from Three Rivers College.
The plaintiff incident to her work at Electric Boat in times past suffered an injury and her present position with Pfizer's is that of an administrative assistant as a result of the injury that she sustained.
The plaintiff's time frame while working at Electric Boat was 1978 to 1992 as a welder. The injury that she sustained was to her neck.
It was only as recently as September of 2000 that the plaintiff left her employment at Electric Boat after being there for many years.
It is the plaintiff's opinion that in due course she will receive a pension but that she is not yet eligible for the same, due to her age.
The plaintiff started her position with Pfizer's in December of 2000 and that is the sole source of her income at the present time.
The plaintiff initially acquired the property known as 20 Fitch Avenue CT Page 2691 in April of 1980. The aforementioned property had been purchased at or about that time by the plaintiff and her prior husband from whom she was divorced in 1984. The plaintiff acquired her former husband's interest at the time of the dissolution of that marriage in 1984 and, as earlier noted, entered into this marriage in 1987.
The plaintiff testified that she has maintained the home, paid the taxes thereon, the insurance, maintenance costs and any mortgage payments due thereon.
It was the plaintiff's testimony that the plaintiff and the defendant each kept separate accounts.
After the parties were joined in marriage, apparently the defendant was desirous of being one of the owners of record for the property and in due course the plaintiff quitclaimed an interest in the property to the defendant. This however was not incident to any refinance.
The plaintiff's position is to the effect that the defendant has made only limited financial contributions with regard to the interest which he presently holds in the aforementioned real estate. The majority of the improvements that were made on the subject real estate according to the plaintiff were made by her.
There was testimony to the effect that the defendant paid for some paneling and a carpet in one room.
The plaintiff testified that incident to maintaining the property that she caused the outside of the same to be painted and properly cared for, that she installed carpeting in 1993.
The plaintiff felt that the defendant's contributions toward any improvements during the marital union to date was to a value of no more than $2,500.00.
The plaintiff testified that she caused new windows to be put in the property, took out a loan for $5,000.00 to achieve said purpose and also to install carpeting.
The plaintiff testified that she caused new cabinets to be placed in the kitchen and took a loan to achieve that purpose and that it was paid solely by her.
It is the plaintiff's position that she should be entitled to the entire interest in the subject real estate and that no payment by her to the defendant should be required. CT Page 2692
The plaintiff testified she has a 1999 Toyota motor vehicle and that she pays the loan incident thereto and that the title to the same is in her name.
The plaintiff's stated income is apparently based on a 40-hour week.
The plaintiff testified that all debts shown on her Schedule A attached to the financial affidavit are hers.
The 1995 Cadillac motor vehicle referred to is, according to the plaintiff, the property of the defendant and is in his name.
The 1987 Mazda pickup vehicle, the plaintiff says, is her vehicle.
The plaintiff is desirous of keeping the contents of the home and the plaintiff makes no claim against certain assets of the defendant shown on her financial affidavit as Van Kampen American Funds and InVest Company.
It is the plaintiff's position that she is desirous of retaining her SSIP and her Roth IRA.
Some little time ago the plaintiff waived and signed off on any of the defendant's pensions and benefits and the plaintiff indicated that she makes no claim incident thereto or as to any other assets of the defendant.
The plaintiff testified that as early as one year after the marriage that the plaintiff was inclined to the view that the marriage was a mistake.
The plaintiff's testimony was to the effect that in her words the defendant would parade her around like a trophy at Navy gatherings of the defendant and that she was the object of verbal abuse.
The plaintiff claimed that the defendant was immoderate in his consumption of spirits and that at a wedding that the parties attended that the defendant was abusive to her and, in her words, tried to push her through a plate glass window.
It is the plaintiff's claim that there was verbal and mental abuse inflicted upon her.
The plaintiff testified that on one occasion the defendant threatened "to take her out with him" CT Page 2693
The plaintiff filed for a restraining order.
There was an occasion when the plaintiff stayed with a neighbor whose residence was across the street from the subject property and it was the plaintiff's claim that on one evening the defendant called and spoke to her on the phone and used vulgar and obscene language. In addition, it appears that the defendant came to the residence at which she was staying and threw a stone or rock through the front door.
It appears that the defendant, among other problems, is a diabetic.
The plaintiff's testimony was to the effect that she is able to work full time at the present time. The plaintiff has made no worker's compensation claim with regard to her Electric Boat Association.
The plaintiff, mindful of the degree which she earlier secured in educational matters, has not applied for work in the criminal justice system.
The plaintiff's compensation according to her testimony is to the effect that she receives $16.00 an hour at Pfizer's, that she has medical and allied health coverage and that the defendant is covered at the present time by virtue of her employment.
At the time that the parties were joined in marriage both were at that juncture employed by Electric Boat.
The testimony is to the effect that the defendant has had a heart bypass operation.
The plaintiff's testimony is to the effect that her SSIP at Electric Boat is at the present time frozen. The value is shown on her financial affidavit, which will be touched on in due course. She is not yet eligible.
It was the plaintiff's testimony to the effect that benefits that she might he entitled to under her pension plan cannot be collected for a substantial period of time due to her age.
The subject residence was initially acquired by the plaintiff and her former husband as earlier noted in the memorandum and the price at that time according to the testimony was $42,000.00.
The aforementioned loan for new windows, according to the plaintiff, has been paid off. CT Page 2694
The balance due on the mortgage, according to her testimony, is $47,000.00.
The parties have been married for approximately 13 years.
At the time of the marriage the parties were joined together by a justice of the peace and apparently every five years from and after the date of the marriage the parties renewed their marital vows before the same justice of the peace; notwithstanding the plaintiff's testimony as to her early recognition that the marriage was a mistake.
The testimony indicated that at the time of the aforementioned breaking of the glass in the door of the neighbor's home across the street that the plaintiff was there with a friend who was trying to comfort and support her.
The defendant had accused the plaintiff of straying from the fold.
The plaintiff candidly acknowledged to some extent there was some fault on her part in the breakdown of the marriage, that the plaintiff realized the present state of affairs insofar as the defendant is concerned and the state of his health in recognition of his heart problems and diabetes.
The plaintiff indicated that she was making no claim for alimony as against the defendant.
The plaintiff is desirous of having her maiden name restored to her. She requests that the prior order requiring her to pay the defendant be terminated and vacated and represented that the defendant made no payments on the mortgage of the former home of both of the parties.
The plaintiff indicated that there were some problems on occasion with regard to the immoderate use of spirits by the defendant, that there was an instance of physical violence when the parties were attending a wedding at the home of the defendant's nephew and that as a result of the altercation the serving of spirits at that occasion was stopped and terminated.
The plaintiff testified that due to the defendant's claimed intoxicated state that she had been pushed into a plate glass window.
There is no indication of any substance abuse involving drugs. The health form indicates that this is the third marriage for the defendant and the second for the plaintiff. CT Page 2695
Again according to the health form, the defendant has a college education. The nature of the degree was not testified to and the plaintiff's education is indicated as being two years college; however, the testimony was to the effect that she has attained a degree in criminal justice in the not too distant past.
The plaintiff's testimony was to the effect that her staying at a neighbor's across the street was for the purpose of seeking, in her words, comfort and support from a friend.
The plaintiff told the defendant in October of 1998 that she was desirous of having the marriage dissolved and the plaintiff acknowledged that there has been no intimacy between the parties for a long period of time.
The defendant's testimony was to the effect that he now lives on Buddington Road in Groton, that he had been employed by Electric Boat for 14 years as of the date of the marriage, and his assets were reflected on the financial affidavit.
The defendant left Electric Boat in 1992.
The defendant represented that either by virtue of his savings or financial issues concerning prior dissolutions that at one point he had $25,000.00, that $15,000.00 thereof was spent during the term of this marriage and $10,000.00 was put into certain investments.
The defendant verified his health problems, that he has heart disease and is diabetic. He is treated by Dr. Milstein.
In 1992 the defendant was afflicted with angina problems and an operation was done at Yale New Haven Hospital to affect a heart bypass.
The defendant has a long-term disability at Electric Boat and he has no present ability to return to that work.
On one occasion in trying to determine whether or not he is able to engage in meaningful work the defendant worked for two days at Mohegan Sun but found that he was unable to physically continue.
The defendant described his condition as congestive heart failure and anticipates that in the near term he may be required to have a pacemaker.
The defendant's medication is presently paid for incident to the medical coverage provided by virtue of the plaintiff's employment. The CT Page 2696 defendant has to pay only "a co-pay".
The defendant's testimony was to the effect that it would cost him $239.00 a month for the allowable COBRA three-year period after the parties might be granted the request for a dissolution of the marriage.
Before the present status, at one point the defendant's disability payments had been terminated; to wit, in April of 2000 by notice from Aetna.
The defendant is taxed on his pension benefits.
It is the defendant's claim that the $100.00 pendente lite alimony payable by the plaintiff to the defendant has never been paid.
The defendant does receive Social Security benefits, has to pay for his prescriptions with regard to co-pay, mindful of the present state of affairs with the plaintiff's medical coverage.
The defendant testified that if he were able to continue at Mohegan Sun that the medical premium incident to that employment would be approximately $3,500.00 annually.
The defendant testified that the mortgage payments on the Fitch Avenue property are approximately $950.00 a month.
The defendant testified that during the term of the marriage he paid for food, hu. travel and that the plaintiff and the defendant did in fact travel to many places including Ireland. the island of Barbados and like places.
The defendant testified that he paid for entertainment matters for the parties and that what he paid out on a monthly basis exceeded the payments that the plaintiff was making as concerns the home and matters of interest to her.
At one point during the life of the marriage a Jacuzzi or hot tub apparently was installed on the premises at a cost of over $8,000.00.
The plaintiff and the defendant apparently considered marriage counseling in 1999 but to no avail.
The defendant testified that he felt that there was a substantial age difference between the parties and that that became an insurmountable problem. Because of certain physical problems, apparently there was no intimacy between the parties for a considerable period of time. CT Page 2697
The defendant characterized his use of spirits as extremely moderate and the defendant professed that there was no physical violence in the marriage and no straying from the fold on his part.
The defendant testified that in 1996 the parties traveled to a naval reunion event in Texas and that the parties had, in his words, a good time.
The defendant is required to take as many as 12 different types of pills a day and had, just us of the time of the hearing on this matter, received notice of the reinitiation or commencement of his pension benefits.
The defendant pays $258.00 on the mobile home in which he resides monthly and $320.00 for what he termed as lot expenses.
The defendant testified he pays his own car insurance and overall the defendant claimed he had a relationship with General Dynamics over a period of 19 years.
The defendant claimed that the filing of the dissolution petition came as a surprise to him and that the same was served on him the day after the incident that occurred across the street while the plaintiff was staying with a neighbor.
It was the defendant's claim that there were indiscretions on the part of the plaintiff. He characterized his state of well being as being "sick". He was hospitalized in June of 2000 and he sees a cardiologist every four months.
His physical efforts are restricted and his testimony was to the effect that his walking is difficult and his breathing labored.
The defendant denies any fault in the breakdown of the marriage.
The defendant testified that the mobile home in which he lives in Groton on the rented lot was acquired for $32,000.00.
The difference in ages between the parties he stated was 21 years.
The defendant indicated that he first experienced heart difficulties at age 29 and has had two heart attacks in the last year.
The defendant takes nitroglycerin with regard to his angina problem. CT Page 2698
During the life of the marriage the defendant was involved in a one-car accident.
The defendant's two prior marriages were dissolved; one in 1986 and the other in 1976.
The defendant acknowledged that the parties kept separate financial accounts during the marriage and that the plaintiff paid all the mortgage and home equity loans.
The defendant's representation was to the effect that he paid a $4,000.00 home improvement item.
As of the time of trial the defendant testified that he had just received $6,000.00; this being the implementation and putting into place of his pension and accrued benefits acquired prior thereto.
The defendant testified that he owes $5,000.00 to a friend and $2,000.00 to a brother.
The defendant testified that his anticipated monthly pension benefits will be $696.00 and that his monthly Social Security disability payment will be $1,151.00.
The defendant served for four years in the United States Navy.
The defendant's claim is that he has been unable to work since 1992 and in his active working years that he received in the neighborhood of $42,000.00 annually.
The defendant as of April 2001 will be 66 years of age.
From the exhibits the court makes the following findings of fact:
Plaintiff's Exhibit No. 2, a statement from the American Funds Group to the defendant indicating a summary of assets held by the Investment Company of America on his behalf, account value as of March 31, 2000, $74,918.87.
Plaintiff's Exhibit No. 3, a statement from the Office of the Assessor of the City of New London with regard to property known as 20 Fitch Avenue in New London; total 1999 assessed value, $48,090.00. The prior assessed value in 1998 was $63,490.00 indicating that the assessed value has dropped appreciably. CT Page 2699
Plaintiff's Exhibit No. 4, Uniform Residential Appraisal Report performed by the Russ Appraisal Service concerning property known as 20 Fitch Avenue, New London. This appraisal conducted in October 1999 indicates that the value by sales comparison approach is $92,500.00.
Plaintiff's Exhibit No. 5, an appraisal of real estate concerning property located at 20 Fitch Avenue as of September 24, 1998 done by Flanagan Associates indicated that the value of the property at that time was appraised at $80,000.00.
From the financial affidavit of the parties the court notes as earlier touched on that the plaintiff's present position and occupation is that of an administrative assistant at Pfizer's. Gross weekly wage from her employment, $893.00; deductions for federal and state taxes and Medicare, $187.00 for a net of $706.00. No other income reflected. Total weekly expenses indicated to be $526.67 with a weekly mortgage payment of $139.00.
Schedule A attached to the plaintiff's financial affidavit reflects the following debt: Visa, $4,557.00; Home Depot. $993.00; credit union loan, $2,000.00; Sears, $992.00 Newport News Credit, $631.00; legal fees, $2,000.00; personal loans, $12,000.00; total debt, $23,173.00.
The plaintiff values the subject real estate at $80,000.00 with a mortgage of $50,000.00 for an equity of $30,000.00. She reflects the 1999 Toyota Corolla valued at $13,000.00 with the same amount being due thereon. The 1995 Cadillac DeVille valued at $10,000.00 with a loan balance of $4,714.00. The 1987 Mazda is valued at $13,200.00. Miscellaneous personal property and furnishings, value unknown. Nothing shown for any checking or savings account.
The plaintiff's SSIP is valued at $96,000.00 and the Roth IRA at approximately $1,485.00 for a total cash value of all assets of $145,971.00; however, the plaintiff is including the total equity of the 20 Fitch Avenue property in which the defendant has apparently of record of one-half interest.
From the defendant's financial affidavit he shows his status as being retired, Social Security and pension benefits, $163.00; weekly pension benefits, deductions, $22.00, for a net of $141.00; Social Security, $267.00 weekly; Medicare deduction, $39.00, total weekly income $369.00. Weekly expenses are shown as $484.00 including the mortgage payments on his mobile home of $144.50. The defendant shows debt due Visa, $4,300.00; Sears, $300.00; family loan, $3,000.00 for a total of $7,600.00. CT Page 2700
The defendant values 91 Buddington Road in Groton, the mobile home, situated on a lot for which rental is paid, at $30,000.00, with a mortgage of $16,500.00 thereon for an equity of $13,500.00.
The 1995 Cadillac valued at $12,000.00, loan balance, $4,000.00, equity, $8,000.00. Furnishings and personal effects, $4,000.00, a savings account of $1,000.00, a checking account of $500.00 and American Funds bonds $75,000.00.
 Discussion
This is a marriage of 13 years duration.
There are no children issue of this marital union.
This marital union was the third for the defendant and the second for the plaintiff.
The plaintiff at this time is age 44.
In a matter of just a few weeks, the defendant will be age 66.
The parties have not been the recipient of any welfare or assistance.
The age difference between the parties is considerable and may have contributed to the breakdown of the marriage.
The defendant's education extended through high school and securing a college degree per the health form.
The plaintiff has a degree in criminal justice.
There was at an earlier point in time an order entered as to pendente lite alimony in the amount of $100.00 a week to be paid by the plaintiff to the defendant.
In matters of health the plaintiff, according to the testimony, may need a knee replacement in due course.
The defendant is in much poorer physical state being a diabetic and having heart problems including angina and being on a regimen of various pharmacy matters requiring the consumption of many pills every day.
The defendant, at this point it would appear, has no realistic prospects with regard to any future employment. CT Page 2701
The real estate, presently jointly owned by the parties, according to the testimony, was initially, as noted in the memorandum, acquired by the plaintiff and her former husband and at a point in this union the plaintiff conveyed over an equity interest in the real estate to the defendant.
There was no indication in the testimony that when this was done that the defendant incurred any liability or responsibility as concerns the outstanding mortgage deed and note.
According to the testimony insofar as the motor vehicles are concerned, the Toyota is in the name of the plaintiff as well as the pickup truck. The Cadillac is in the name of the defendant.
The testimony indicates that the plaintiff has already `signed off' on the defendant's pension and benefits incident thereto, and that the plaintiff makes no claim against the assets of the defendant shown as Van Kampen, American Funds and InVest on her financial affidavit.
The plaintiff wishes to retain the contents of the former residence of the parties and presumably the defendant took whatever he was desirous of having when he acquired the mobile home at 91 Buddington Road.
Insofar as the issue of fault is concerned, it may be that there was some fault on both sides of the aisle; however, it would appear that the greater degree might perhaps lie at the door of the plaintiff.
According to the testimony, any obligations due and owing on the mobile home at 91 Buddington Road and the lot rental charges incident thereto are solely in the name of the defendant and for which he is responsible.
It would appear that one of the principal reasons for the breakdown of the marriage was the age difference between the parties and physical problems that arose whereby matters of intimacy were no longer possible between the parties.
The only parties that testified during the proceedings were the plaintiff and the defendant. There were no outside corroborative witnesses with regard to the plaintiff's claims as to the defendant's immoderate use of spirits. There was no indication of substance abuse and no independent verification of the physical violence as concerns the plate glass door.
 The Law
The court has considered all of the statutes which apply in matters of CT Page 2702 this nature which include without limitation Connecticut General Statutes (C.G.S.) § 46b-82 regarding alimony and § 46b-62
regarding attorney's fees.
The court has considered all of the applicable case law that governs the matter.
The court has considered the testimony of the parties, their candor or lack thereof, and all exhibits and the arguments of counsel.
In considering the issue of alimony, the court has considered the length of the marriage, the cause of the breakdown and dissolution, the age, health, station, occupation and employability of each of the parties and the estate and needs of the parties.
The court has considered the standards of living of the parties.
The court has considered all of the exhibits.
The court has considered the respective financial positions of the plaintiff and the defendant, their prospects for future income and opportunity and the state of their physical well being or lack thereof
The Court enters the following orders.
As concerns the real estate known as 20 Fitch Avenue, New London, the defendant shall convey and set over to the plaintiff by a good and sufficient quit claim or warranty deed all of his right, title and interest in said premises.
There being no indication that the defendant is responsible on the mortgage deed or note, the plaintiff shall be solely responsible for the same and held the defendant harmless in the event that any demand should be made against him as concerns the outstanding mortgage.
At the time of the execution of the deed from the defendant to the plaintiff as concerns 20 Fitch Avenue, the plaintiff shall pay the defendant the sum of $2,500.00 in reimbursement for expenditures made by the defendant on the subject premises during the term of the marriage.
The plaintiff may retain the contents of the home and residence at 20 Fitch Avenue.
The plaintiff may retain the 1999 Toyota automobile, which presently stands in her name, and on which there is a loan balance, and the plaintiff shall be responsible for said obligation. CT Page 2703
The 1995 Cadillac motor vehicle shall remain the property of the defendant and he shall be responsible for the loan balance shown thereon.
The 1987 Mazda pickup vehicle shall be the property of the plaintiff and she shall be responsible as concerns any obligation incident thereto.
The plaintiff may retain her SSIP shown on her financial affidavit as being valued at $96,000.00 and Roth IRA valued on her financial affidavit at $1,485.00.
The defendant may retain the mobile home located at 91 Buddington Road and be solely responsible for any debt or obligation that attaches thereto.
If for any reason a release is necessary as concerns said mobile home or the appurtenances thereof, the plaintiff shall execute the same on request.
Each party shall be responsible for the debts shown on their financial affidavits. In the case of the plaintiff, the debts earlier adverted to totaling $22,673.00 or such further amount as may have accrued to the date hereof and in the case of the defendant, the sum of $7,600.00 as reflected on his financial affidavit.
The plaintiff shall maintain the defendant on her medical and dental coverage as available incident to her employment with Pfizer for the period allowed (three years). The cost of the same to be equally apportioned between the parties; one half to the plaintiff, one half to the defendant.
The defendant may retain the personalty that he presently has in his possession or at his residence.
The defendant may retain COFCU savings and checking account shown on his financial affidavit to the amount of $1,500.00.
The defendant may retain the American Funds (bonds) as reflected on his financial affidavit to the amount of $75,000.00.
The plaintiff shall pay to the defendant the earlier ordered pendente lite alimony for the period date of entry by the court to the date of this memorandum decision at the rate of $100.00 for each week thereof, and the court declines to vacate the earlier order of McLachlan, J. CT Page 2704
The court enters no order as to periodic alimony as to either the plaintiff or the defendant.
The plaintiff may retain free and clear of any claim by the defendant her prospective pension benefits from Electric Boat.
Mindful of the state of the defendant's health and the bleak nature of his financial future, the plaintiff shall pay the defendant $5,000.00 within one year from the date of this memorandum.
The plaintiff may have restored to her, her maiden name of Komiega, and henceforth shall be known as Nancy Komiega.
The court grants the relief prayed for and dissolves the marriage on the grounds of irretrievable breakdown and declares the parties to be single and unmarried.
Austin, JTR